## MAGNUS MANHEIM vs. RUFUS CARR and another.

#### Common carriers. Contract. Exceptions. New trial. Practice.

Exceptions not appearing on their face to have been allowed by the justice to whose rulings they are taken, cannot be considered by the court.

The plaintiff here sues the defendants as common carriers, for a breach of an alleged contract to deliver to the Eastern Express Company a box which the plaintiff had entered on the defendants' order-book to be taken "to the early train." The defendants' hackman testified that he had no other instructions relative to it, but the plaintiff introduced witnesses who swore that additional verbal directions were given to deliver the box to the expressman at the depot. The hackman took the box to the station and deposited it with other baggage intended to be carried out upon that early train: *held*, that a verdict for the defendants was not so manifestly against evidence as to justify setting it aside; nor was it against law, the deposit of the box upon the platform being a compliance with the order to take it to the early train.

ON MOTION FOR A NEW TRIAL, upon the ground that the verdict for the defendants was against law and evidence. The plaintiff was an itinerant vender of millinery goods which, for several years, he has been accustomed to sell throughout this State. The defendants were proprietors of hacks in Lewiston, their main business being the transportation of passengers, though their drivers occasionally took packages to the express, receiving pay therefor,

for which they accounted to the defendants. Upon the sixteenth day of November, 1871, Mr. Manheim was at the American House in Lewiston, having with him a case of his merchandize, which he had put up for S. J. Stanwood & Co., of Portland, and which he desired to forward by express to that firm. He left word to this effect at the express office; but, finding on his return to his hotel, at nine o'clock in the evening of that day, that it had not been called for, he told the landlord to give it to any hackman that came there, and tell him to deliver it to the Eastern Express Company at the depot, the next morning. Accordingly, the landlord made this entry in the defendants' order book, which they kept at his hotel: "Take a large case in the hall to the early train. It belongs to Manheim." The next morning it was taken by one of the defendants' drivers, who swore that he received no information upon the subject except that derived from this entry upon his book, while the landlord, and one or two others, testified that verbal directions were given him to deliver the box to the expressman at the depot. The hackman testified further that he carried the plaintiff's box, together with trunks belonging to other persons, to the Maine Central Railroad depot in Lewiston, and placed them all (the box and trunks) upon the platform where they check baggage; that the baggage-master checked the trunks, but not the box; wrote nothing on it; that the box was left upon the platform because the driver supposed Manheim was coming to attend to it himself; and that he had quite often carried boxes to the depot and left them, and Mr. Manheim would be there to look out for them. This box never reached its destination, nor was anything ever learned by the owner what became of it after it was deposited at the station.

The plaintiff's declaration alleged that the defendants were common carriers and that he delivered this box to them to be carried from the American House to the depot of the Maine Central Railroad Company in Lewiston, "there to be safely and securely delivered to the Eastern Express Company or its agent," which the defendants, for hire, undertook to do, but did not do it, and so

negligently conducted themselves that the box was lost. Verdict was rendered for the defendants, which the plaintiff moved to set aside because (as he said) the superiority of his witnesses in numbers and credibility was so manifest and overwhelming as to show the result reached to be plainly against evidence. He also contended that it was against law, because, even if the entry in the order book was the only instruction given, leaving the box upon the platform, without seeing that it was put into the car, was not carrying it "to the early train."

The last witness called by the defence was Frank Myrick, who was permitted to state, against objection by the plaintiff, that, being at the depot the morning Mr. Rose (the hackman) brought the box there, he saw Mr. Rose put it "where they always deliver the baggage," and heard the baggage-master ask, "where do you want this to go?" and Rose reply, "I do not know. I had the order from the American House to bring the box to the depot. I suppose Mr. Manheim will look out for it himself." In admitting this testimony the presiding judge remarked; "I think it is competent to prove what he (Rose) said and did, not as a declaration, but as a fact that he did deliver, and what conversation took place between Rose and the baggage-master." To this ruling, as well as to one permitting Joseph Littlefield, who, for over twenty years, was the depot-master upon the Maine Central Railroad at Auburn, to state that "it is the custom there to take charge of boxes, trunks or packages brought and deposited on the platform of the depot," the plaintiff excepted; but his exceptions, though drawn up in form, did not appear ever to have been certified and allowed by the justice who made the rulings by which the plaintiff considered himself aggrieved.

*Frye, Cotton & White*, for the plaintiff.

*Record & Hutchinson*, for the defendants.

WALTON, J. This case, as printed, presents a bill of exceptions as well as a motion for a new trial. But the exceptions do not

appear to have been allowed, and cannot, therefore, be considered.

With respect to the motion it is important to notice that the issue between the parties is not whether the defendants undertook as common carriers, to carry and deliver the box in question to the Maine Central Railroad Company, for the plaintiff's declaration avers neither the existence nor the breach of such a contract; but whether they undertook to carry and deliver it to the Eastern Express Company. The jury found for the defendants, thus affirming that there was no such undertaking; and upon this issue we think the verdict is not so clearly against the weight of evidence as to justify the court in setting it aside. The only entry upon the defendants' order book was simply to take the box "to the early train." No mention was made of the Eastern Express Company. The driver swears positively that he received no other direction. It was for the jury to determine whether or not he told the truth. If he did, that was the end of the plaintiff's case.

The plaintiff also claims that the verdict is against law. He insists that if no other direction was given than that put upon the order book, still, upon the defendants' own showing, that was not complied with. We think it was. If a hackman, whose business generally is the carrying of passengers to and from the hotels and depots of a city, can be regarded as a common carrier of goods, simply because he occasionally takes such parcels when no passenger accompanies them, still, if he receives no other direction than to take a box "to the early train," and he does take it to the early train, and finding neither the owner nor any authorized agent of his there to receive it, carries it into the depot—the depot being a substantial building with doors which are closed and locked at night—and in the presence of the baggage-master, and with his knowledge, places it upon the platform, where trunks and other articles going upon the train are usually put, we think he has done all that the law requires of him in fulfilment of his contract; and if the box is afterwards lost, that he is not responsible for it.

*Motion and exceptions overruled.*

APPLETON, C. J., DICKERSON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.